

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

In re

Benito Sinclair,

    Debtor.

Case No. SV 05-14975

Chapter 7

**MEMORANDUM OF DECISION AND ORDER ON MOTION TO SURCHARGE DEBTOR'S HOMESTEAD EXEMPTION**

Date: November 9, 2005
Time: 10:00 a.m.
Place: Courtroom 302

## Background

Debtor filed chapter 13 bankruptcy on April 13, 2004 *in pro per*. That same day, the Clerk's Office mailed the Debtor a Case Commencement Deficiency Notice and an Order. Specifically, Debtor failed to file Schedules F, G, H and J, a Chapter 13 plan, and a signed Statement of Financial Affairs. All of these documents, except Schedule J, were subsequently filed on April 28, 2004. The case was dismissed on May 6, 2004. Debtor asserts that his case was dismissed because his attorney failed to file Schedule J.

On May 19, 2004, Debtor's attorney filed a Motion to Modify Order of Dismissal to Remove Bar on Refiling under 11 U.S.C. § 109(g). This motion was granted and an order was entered on this motion the same day. According to the terms of the motion and the order, the case was reinstated as a chapter 7 case on May 19, 2004.

On June 4, 2004 and on July 7, 2004, secured creditors with an interest in Debtor's home filed motions for relief from the automatic stay. The Chapter 7 Trustee filed oppositions to these motions, and the motions were eventually withdrawn.

On October 3, 2005, the Chapter 7 Trustee, Edward M. Wolkowitz, filed a Motion to Surcharge Debtor's Homestead Exemption. On October 26, 2005, my chambers received a letter from the Debtor in response to the Motion. This letter was deemed an Opposition, and was routed to the Clerk's Office for filing and was filed on October 27, 2005. The letter was served on the Trustee, who filed a Reply to it.

## I. *Motion to Surcharge Debtor's Homestead Exemption*

The Trustee's motion seeks an order surcharging the Debtor's homestead exemption by $82,765. Of this amount, $48,229 represents attorneys' fees and costs incurred due to the Debtor's alleged dilatory tactics and fraud, which delayed the sale of Debtor's home. $34,535 represents diminished equity in Debtor's residence as a result of these alleged delays and Debtor's failure to continue paying his secured creditors. Subtracting $82,765 from Debtor's claimed $125,000 exemption would leave $42,235.

The Trustee asserts that the Debtor's allegedly fraudulent actions delayed liquidation of his residence by the Trustee, which dramatically increased attorneys' fees and costs and reduced equity available to creditors. Relying on <u>Latman v. Burdette</u>, 366 F.3d 774 (9th Cir. 2004), the Trustee requests this Court to surcharge the Debtor's homestead exemption to compensate for these losses. The Trustee argues that Debtor's fraud is demonstrated in the following facts:

1. Helen Sinclair, Debtor's wife, has a history of several prior filings. Title to Debtor's property is held in joint tenancy between Helen Sinclair and Debtor.
2. In July 2004, Debtor and his spouse consented to the sale of their residence. The Trustee prepared a stipulation, but Debtor refused to sign or cooperate. The Trustee was forced to file a Complaint under Section 363(h).
3. To avoid default judgment, Debtor's attorney filed a motion to dismiss, fraudulently contending in this motion that Debtor had obtained roughly $1 million

- 2 -

in financing, from which all creditors would be paid in full. The parties entered into a settlement agreement, which provided that the Trustee would sell the equity in Debtor's residence back to the Debtor if the bankruptcy case would remain open, Debtor's secured creditors would be paid in full and the estate would receive a substantial payment. Debtor breached this agreement.

4. Before and during settlement negotiations, Debtor misrepresented the status of his financing to the Court and the Trustee. Contrary to Debtor's statements under oath, escrow was never opened and $1 million was never deposited into it. The Debtor's lender was not prepared to loan him $1 million. The original lender was only willing to lend $620,000 and an additional lender would lend $395,000. Debtor also represented he only owed $435,520 in secured debts against the Property, when he really owed at least $600,000 in secured debts.

5. After default judgment was entered against the Debtor, his daughter, Shana, offered to pay the Trustee $1 million for the property. She failed to pay. Shana feigned interest in purchasing the property. She got the Trustee to postpone lockout with a promise that she would reimburse the estate the lockout costs.

6. Debtor and his wife refused to comply with the judgment, forcing the Trustee to obtain a writ of possession, which had to be enforced by the Marshals.

7. Throughout the case, Debtor failed to make payments to his secured creditors, compelling the Trustee to oppose several motions for relief from stay. Secured claims against Debtor's home dramatically increased.

Based on the above, the Trustee requests that all costs and attorneys' fees incurred in the case since July 2004 be surcharged against Debtor's homestead exemption.[1]

## II. *Debtor's Opposition to the Motion*

Debtor, now again *in pro per*, asserts that he did not engage in any fraudulent or

---

[1] Included in this cost is the cost the Trustee incurred in opposing several motions for relief from stay.

- 3 -

dilatory tactics. He and his spouse never agreed to stipulate to the Trustee's sale of their house. Instead, Debtor's attorney, Andrew Smyth, tried to foist that on them. Shortly afterward, Debtor fired Andrew Smyth and hired a new attorney.

With respect to the stipulation to sell the equity in the Debtor's house back to him, Debtor requested that the transaction not be considered a sale because he felt that it would have the effect of voiding the existing property tax advantage he enjoyed under Prop. 13. Debtor ultimately was not able to comply with the stipulation because financing fell through when the two lenders Debtor was working with could not agree on priority.

Debtor contends that his daughter, Shana, did not consult with him prior to contacting the Trustee's attorney regarding purchasing the Debtor's home. The Debtor argues that he should not be charged with lack of cooperation for his daughter's independent actions. In any event, his daughter asserts she acted in good faith. She, like her father, simply could not get financing together to make the purchase.

Lastly, Debtor asserts that he has a $150,000 homestead exemption because his attorney has stated so in prior pleadings and there was no objection.

The Debtor also stated at the hearing that he is a structural engineer who designed the residence where he and his wife had lived for over forty years. He is now homeless and he and his wife largely are living in their car while awaiting the payment of his homestead exemption.

### III. *Reply to Debtor's Opposition*

The Trustee restates the positions made in the Motion, notably that Debtor made several material misstatements and that Debtor disobeyed the turnover order and failed to explain why. The Trustee also asserts that Debtor's schedules state that he has a $125,000 homestead exemption, not a $150,000 exemption, and that this exemption has never been amended.

### Discussion

After reviewing the history of this case, the pleadings, the Trustee's arguments, the Debtor's explanations at the November 9, 2005 hearing, and an additional declaration from Debtor's counsel, it appears that this case is

the unfortunate result of a debtor who stubbornly refused to face reality or follow reasonable legal advice from two different attorneys and of a trustee who appropriately attempted to accommodate an elderly debtor only to be manipulated and obstructed every step of the way. The end result is a possibly administratively insolvent case, a temporarily homeless debtor and a trustee who unexpectedly volunteered his services in a case that should have resulted in an early dividend to unsecured creditors as the debtor promptly moved out of his home with the "fresh start" of his full exemption.

There is no doubt that the Debtor and his wife repeatedly changed their positions as to whether they would agree to sell their interests in their home or obtain refinancing and buy out the estate's interest. They appear to have repeatedly changed their minds over the course of the case. While this is understandable for an elderly couple in financial ruin and facing foreclosure, the extent to which the Debtor delayed resolution of the case was much more extensive than usual. Mr. Sinclair did indeed tell both his attorney and the Trustee numerous times that the property could be sold, only to later decide he would instead like to refinance. His attorneys and the Trustee relied on these decisions and took steps accordingly.

While the Debtor's conduct in this case was extremely uncooperative and seriously undermined the Trustee's efforts to pay anything to unsecured creditors, whether such conduct merits a surcharge on the Debtor's exemption is a more difficult question.

The Trustee has the burden of proof that the Debtor is not entitled to a portion of a claimed exemption. FRCP 4003(c). This burden must be established by a preponderance of the evidence. In re Barlock, 121 B.R. 13, 15 (Bankr. N.D. Ohio 1990).

"[E]xemptions are scrutinized in light of their impact upon a debtor's estate. They are appropriately disallowed in providing a remedy to the

estate, for wrongful conduct or overreaching by a debtor that otherwise prejudices the estate or its general creditors." In re Ballard, 115 B.R. 190, 191 (Bankr. D. Minn. 1990). Surcharge is an exceptional remedy, and is normally not allowed. See 11 U.S.C. § 522(k) ("Property that the debtor exempts under this section is not liable for payment of any administrative expense . . . ."). Notwithstanding Section 522, some courts, under exceptional circumstances, have permitted surcharge of a debtor's exemptions under the power of the court to prevent abuse of process under 11 U.S.C. § 105(a).

### I. Relevant Case Law

Of all of the published opinions granting surcharge of a debtor's exemption, there are really only two general categories of cases that have permitted surcharge: (1) those permitting surcharge as a form of sanctions; (2) those permitting surcharge as a form of offset. As will be shown, neither form of surcharge is appropriate in this case.

#### a. Sanctions-Based Surcharges

A number of cases have permitted surcharge of a debtor's exemption as a form of sanctions. In In re Swanson, 207 B.R. 76 (Bankr. D. N.J. 1997), the court held that the trustee was entitled to deduct from the debtor's homestead damages incurred because of the debtor's contempt. In In re Stinson, 221 B.R. 726, 732 (Bankr. E.D. Mich. 1998), the court allowed the complete surcharge of debtor's exemption in settlement proceeds where the debtor wrongfully procured settlement without the trustee's authorization. The court reasoned that this was reasonable given that the trustee might have been able to get more out of the settlement. Finally, in In re Karl, 313 B.R. 827, 832 (Bankr. W.D. Mo. 2004), the court allowed a surcharge of the homestead exemption for attorneys' fees and costs as a form of sanction for contempt.

Under the facts of the above cases, applying 11 U.S.C. § 105(a) to surcharge exemptions is justified because it is a mere application of the court's contempt power. Just as the court can compel the debtor in contempt to pay another party out of his or her own funds, the court can compel the debtor to make this payment in the form of a surcharge. The policy concerns behind 11 U.S.C. § 522(k) are outweighed by the court's need to maintain order and decorum and ensure the proper functioning of the system.

b. *Offset-Based Surcharges*

A number of cases have permitted surcharge of a debtor's exemption as a form of offset. For example, in In re Karl, 313 B.R. 827, 832 (Bankr. W.D. Mo. 2004), the court allowed the surcharge of the debtor's homestead exemption in the amount of the value of the debtor's unauthorized postpetition transfer. The court treated the postpetition transfer as if it were an advance on the debtor's exemption, and surcharged the exemption accordingly. Similarly, in In re Koss, 319 B.R. 317, 322-23 (Bankr. D. Mass. 2005), the court similarly allowed surcharge of the debtor's exemption as an offset for the debtor's conversion of estate assets. In re Bogan, 302 B.R. 524, 529 (Bankr. W.D. Pa. 2003), the court granted a surcharge of all of the debtor's exemptions where the debtor had embezzled $400,000 from her employer while in bankruptcy and had failed to provide an explanation of where these funds went. The court held that, under these facts, it would be an abuse of the bankruptcy process to allow any exemptions. The logic seems to be that because the debtor retained the benefit of these illicit funds outside of the control of the trustee, it would be inappropriate to give the debtor a double benefit by allowing her to claim exemptions as well. Finally, Latman v. Burdette, 366 F.3d 774 (9th Cir. 2004), which the Trustee heavily relies upon, also falls into this category.

Under the facts of the above cases, applying 11 U.S.C. § 105(a) to surcharge exemptions is justified because the surcharge prevents unfair manipulation of the Code and ensures the system operates properly. The policy concerns behind 11 U.S.C. § 522(k), such as ensuring that debtors retain enough assets post-bankruptcy to have a viable chance at a fresh start, are also met because a offset-based surcharge provides the debtor with the full value of the exemption, albeit in a different form.

### c. Relevant Dicta

Dicta in several cases suggests that a court's authority to surcharge an exemption may extend beyond the above categories of cases. See, e.g., In re Bogan, 302 B.R. 524, 529 (Bankr. W.D. Pa. 2003) ("The shield of exemption may be penetrated in extreme circumstances where there is a fraudulent conduct or a clear showing of bad faith."); In re Kyle, 317 B.R. 390, 392 (B.A.P. 9th Cir. 2004) ("[T]he appropriate remedy for a debtor's excessive gamesmanship surrounding an exemption that is available as a matter of law is to surcharge, rather than deny outright, the claimed exemption . . . .").

Even if a court's authority to surcharge an exemption does extend beyond the two categories of cases, however, it does not extend so far as to reach the facts of this case.

## II. *Latman v. Burdette*

In Latman, the court permitted the surcharge of a debtor's 11 U.S.C. § 522(d)(1) and (d)(5) "wild card" exemption. There, the debtor acted fraudulently in purposefully failing to disclose certain assets in his bankruptcy schedules. The court reasoned that if the debtor were permitted to retain these undisclosed assets and also receive the wild card exemption, the debtor would be able to inappropriately enlarge his wild card exemption beyond the statutory limit. By granting surcharge, the court effectively

brought the debtor's wild card exemption to the amount it should be. This had the same basic result as would have occurred had the trustee sought turnover of the undisclosed assets and then given the debtor his exemption.

The Trustee relies on Latman as authority to recover all attorneys' fees and diminished equity in the property in the case from the date Debtor failed to enter the stipulation to sell his property. This request is beyond the scope of Latman and all other case law on the subject of surcharging exemptions. Latman did not surcharge for attorneys' fees, administrative costs, or the value of diminished equity. It simply allowed for an offset of the amount of unreported assets against the amount of the exemption. Here there is no similar offset. Unlike the debtor in Latman, Debtor did not hide assets from the estate in this case. He retained no undisclosed benefit. Instead, he caused delay, and increased costs to the Trustee. Latman does not support surcharge for such dilatory tactics.

The Trustee's argument that Latman is on point because there was fraud in Latman and there is fraud in this case is unconvincing. The case simply does not stand for such a broad proposition. Even if it did however, there does not appear sufficient fraud on the part of the Debtor in this case to warrant granting the motion.

The Debtor sought to have his case dismissed because he was going to obtain refinancing and buy out the estate's interest. He, along with his daughter, delayed numerous hearings on motions or attempts to sell the property with this approach. While this is not unusual for a chapter 7 debtor, the most egregious step he took was to submit a letter in support of his request to delay the sale of his home from "Glen Oaks Escrow" stating that "Glen Oaks accepts deposit in the amount of 1,015,000.00 on our final tenth day Glen Oaks will have funds prepared and ready for distribution in agreement with terms of chapter 7 bankruptcy [sic]." With this letter, the

1  Debtor convinced the Court to give him additional time to save his home and
2  convinced the Trustee to delay the sale.
3      It now appears that no funds were ever deposited and the imminent
4  closing on escrow was merely a hope, but clearly not one based in any true
5  financial reality. The Debtor claims that he never saw this letter and did not
6  know his attorney had submitted it to the court. The Court does not find this
7  explanation credible under the circumstances. It is unclear, however,
8  whether the Debtor was intentionally lying or whether a lender or real estate
9  professional purposely worded the arrangement they had ambiguously in
10 order to buy time to close a transaction with the Debtor. It appears that this
11 Debtor was speaking to numerous lenders, realtors, attorneys and other
12 assorted professionals in an attempt to save his home. He appears to be
13 either confused or in denial about his situation. This letter was very poorly
14 worded and really promised very little in a clear explicit manner. In hindsight,
15 it was incumbent upon the Court and the Trustee to require further
16 documentation and explanation. The Debtor did indeed mislead the Court
17 and the Trustee, but whether he did it through this poorly worded document
18 or convincing the Court that his desperate attempts to save his home were
19 likely to be successful is unclear. In any case, while this letter along with the
20 Debtor's other actions do not speak well of the Debtor and are an
21 unacceptable level of game playing and delay, they are still not within the
22 scope of express fraud contemplated by <u>Latman.</u>

### III. *Policy Considerations*

24     This case does demonstrate the importance of allowing debtors to
25 preserve their exemptions. Debtor is now 74 years old. He was formerly
26 was a structural engineer, at one time running a sixty-person firm. At the
27 time of this hearing, however, he was completely homeless. His
28 computers were in storage, preventing him from being able to work as an

1  engineer. When the chapter 7 case is over, all that he will have left is his
2  exemption.
3      There are also serious policy concerns beyond the facts of this
4  case that must be considered in determining whether to grant the motion.
5  Granting this motion would create a slippery slope. If surcharge is
6  appropriate in this case, it is not a difficult argument to make that
7  surcharge would then be appropriate in many if not all cases where
8  debtors attempt to defend their homes from turnover to the trustee. A
9  debtor has the right to defend against the trustee and assert his or her
10 legal rights. Punishing a debtor for doing so by surcharging his or her
11 exemption for the amount of attorneys' fees spent in litigating with the
12 debtor not only is unsound based on policy grounds, but it also
13 contravenes the American Rule on attorneys' fees, which provides that
14 attorneys' fees are not generally recoverable from the opposing party.
15 See In re Bertola, 317 B.R. 95 (B.A.P. 9th Cir. 2004).
16     These policy concerns are, in part, addressed in Latman. Latman
17 warned against granting surcharges against a debtors exemptions
18 unnecessarily.

> [W]e recognize that in the ordinary case the risk of burdening a debtor's 'fresh start' may cause a remedy surcharging exemptions to be improper or unnecessary . . . . Under exceptional circumstances, such as those presented here, surcharge may be the only means fairly to ensure that debtors retain their statutory 'fresh start,' while also permitting creditors access to property in excess of that which is properly exempted . . . . We hold that the bankruptcy court may equitably surcharge a debtor's statutory exemptions when reasonably necessary to protect the integrity of the bankruptcy process and to ensure that a debtor exempts an amount no greater than what is permitted by the exemption scheme of the Bankruptcy Code.

26 366 F.3d at 785-86. As noted above, Debtor in this case is not attempting
27 to exempt any more than that which is permitted by the Code. There do
28 not appear to be exceptional circumstances in this case. The surcharge is

not reasonably necessary to protect the bankruptcy process. Moreover, to grant the instant motion would be to imperil Debtor's "fresh start."

It is an unfortunate facet of the chapter 7 process that a trustee can be forced to litigate issues with a debtor where the debtor really has no basis to defend and should have cooperated with the trustee. This is, however, necessary to ensure that all parties are allowed to assert their legal rights. Where a debtor has taken a position without a legal or factual basis in circumstances similar to those in this case, the remedy appears to lie in a motion for sanctions under FRCP 11 (incorporated by FRBP 9011). Throughout this case, such a motion was never filed.

### IV. *Homestead Exemption*

In Schedule C, Debtor claimed a $125,000 homestead exemption under Cal. Civ. Proc. § 704.730(a)(3) (2005). Formerly, the homestead exemption under this section was $125,000. However, on July 14, 2003, the California Legislature amended this section to increase the homestead exemption to $150,000.

The Debtor now claims that he is entitled to the $150,000 exemption because his attorney stated as much in an unrelated pleading. While the Debtor blames the exemption amount on his attorney, Schedule C was filed by the Debtor himself when he was representing himself. Along with other matters in the case, the Debtor appears to have taken one course, changed his mind later, and then blames any resulting confusion on counsel.

Not only has the Debtor failed to amend his schedules since he first filed Schedule C on April 13, 2004, but his initial claimed $125,000 exemption has been relied on by the Trustee in, at a minimum, the Trustee's decision to pursue the sale of the only estate asset, the Debtor's home. Especially as demonstrated by the extreme costs to which the Debtor put the Trustee in his efforts to sell the Debtor's home, the Trustee had to evaluate

at numerous points in the case whether there was enough equity left for the estate. A $25,000 difference is a material factor in a Trustee's decision as to whether an estate asset should be sold or abandoned. Because it is prejudicial to be changing a claimed exemption over 18 months after the Trustee started relying on it, the Trustee's position on this is correct. *See* In re Arnold, 252 B.R. 778, 786 (9th Cir. BAP, 2000)(an amendment of exemption that prejudices third parties may be denied).

### Conclusion

In conclusion, there are insufficient factual and legal grounds to grant the motion to surcharge Debtor's homestead exemption in this case. The motion is denied. The Trustee is to credit the Debtor with his entire $125,000 homestead exemption, less amounts already paid.

**IT IS SO ORDERED.**

DATED: January 5, 2006

_____
MAUREEN A. TIGHE
United States Bankruptcy Judge

## CERTIFICATE OF SERVICE BY MAIL

I certify that a true copy of this **MEMORANDUM OF DECISION** was mailed on ___1/5/06___ to the parties listed below:

Benito A. Sinclair
5636 Tuxedo Terrace
Los Angeles, CA 90068

Benito A. Sinclair
P.O. Box 29428
Los Angeles, CA 90029

Benito A. Sinclair
P.O. Box 29339
Los Angeles, CA 90029

Nicholas W. Gebelt
Law Offices of Nicholas W. Gebelt
15150 Hornell St.
Whittier, CA 90604

Edward M. Wolkowitz
1888 Century Park East, Ste. 1500
Los Angeles, CA 90067

Todd Frealy
1888 Century Park East, Ste. 1500
Los Angeles, CA 90067

Office of the U.S. Trustee
21051 Warner Center Lane, Ste. 115
Woodland Hills, CA 91367

Office of the U.S. Trustee
725 S. Figueroa St., 26th Fl.
Los Angeles, CA 90017

Andrew E. Smyth
4929 Wilshire Blvd., Ste. 988
Los Angeles, CA 90010

Dated: 1/5/06

_____
DEPUTY CLERK